IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Parrie L. Krueger, | ) | C/A No.: 1:13-1677-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

1

I.    Relevant Background

A.    Procedural History

On April 13, 2010, Plaintiff filed applications for DIB and SSI in which she alleged her disability began on January 1, 2007.  Tr. at 106–08.  Her applications were denied initially and upon reconsideration.  Tr. at 54–58, 61–62, 63–64.  On January 27, 2012, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Edward T. Morriss.  Tr. at 26–45 (Hr'g Tr.).  The ALJ issued an unfavorable decision on February 24, 2012, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 6–18.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on June 19, 2013.  [Entry #1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 48 years old at the time of the hearing.  Tr. at 27.  She completed more than two years of college.  Tr. at 28.  Her past relevant work ("PRW") was as a waitress.  Tr. at 42–43.  She alleges she has been unable to work since January 1, 2007.  Tr. at 106.

2.    Medical History

X-ray of Plaintiff's lumbar spine on May 6, 2007, indicated mild lumbar spondylosis.  Tr. at 234.  X-ray of Plaintiff's thoracic spine indicated mild degenerative changes.  Tr. at 235.

Plaintiff presented to Doctors Care on June 3, 2007, complaining of neck and upper back pain following a motor vehicle accident. Tr. at 438. Plaintiff was prescribed medication and instructed to follow up with her doctor. *Id.*

On January 15, 2008, Plaintiff presented to Doctors Care with complaint of upper back pain after lifting a bag of horse feed. Tr. at 434. X-ray indicated mild thoracic spondylosis, but no fracture or misalignment. *Id.*

Plaintiff presented to Doctors Care on January 22, 2008, to follow up on her thoracic muscle strain. Tr. at 432. Plaintiff reported increased pain and was prescribed pain medication. *Id.*

Plaintiff presented to the emergency room at Summerville Medical Center on March 31, 2008, with complaint of back pain after lifting and holding a heavy dog. Tr. at 279. She had no back tenderness and painless range of motion. Tr. at 280. X-ray of Plaintiff's lumbar spine indicated mild disc space narrowing. Tr. at 226.

On August 9, 2008, Plaintiff presented to the emergency room at Summerville Medical Center with complaint of flank pain with hematuria. Tr. at 272. Plaintiff was diagnosed with acute pyelonephritis, dehydration, hypokalemia, moderate leukocytosis, migraine headache, and acute bilateral nephrolithiasis. Tr. at 275.

On November 24, 2008, Plaintiff presented to the emergency room at Summerville Medical Center complaining of a boil. Tr. at 262. She was noted to be in moderate distress due to pain and anxiety. Tr. at 263.

Plaintiff presented to the emergency room at Summerville Medical Center on January 11, 2009, complaining of anxiety. Tr. at 257. She was observed to be in mild

distress. Tr. at 258. She was also noted to be having a panic attack and to be out of medication. Tr. at 259.

On January 26, 2009, Plaintiff presented to University Family Medicine Flowertown for follow up regarding her anxiety disorder. Tr. at 322. She was noted to be well appearing, well nourished, in no distress, oriented x 3, and to have normal mood and affect. *Id.*

On February 18, 2009, Plaintiff presented to Doctors Care with complaint of back, kidney, and pelvic pain and pressure, frequent urination, and blood in her urine. Tr. at 422. Plaintiff was diagnosed with nephrolithiasis, trichomoniasis, and urinary tract infection. *Id.*

A letter in the record from Dorchester Counseling Services dated March 23, 2009, indicated that Plaintiff was assessed on December 1, 2008, and given a diagnosis of cocaine dependence, early full remission and anxiety disorder, NOS. Tr. at 216.

Plaintiff presented to Summerville Medical Center on March 25, 2009, complaining of back pain. Tr. at 252. She was noted to have mildly limited range of motion in the lumbar spine and decreased rotation to the right and left, but no tenderness was observed. Tr. at 253. She was diagnosed with acute lumbar strain and sprained left hip. Tr. at 254.

Plaintiff again presented to University Family Medicine Flowertown on March 26, 2009, regarding hypertension and left hip pain. Tr. at 324. "Anxiousness" was noted. *Id.*

On April 8, 2009, Plaintiff presented to David H. Jaskwhich, M.D., regarding left leg radicular pain. Tr. at 346. Dr. Jaskwhich observed "[t]he pt is an anxious female who has difficulty seating comfortably. She is moving around in the room. She walks with a noticeable limp." *Id.* Dr. Jaskwhich noted that Plaintiff had positive straight leg raise, limited range of motion of the back due to pain, and tenderness to palpation throughout the back. *Id.* He referred Plaintiff to orthopedist Shailesh M. Patel, M.D. *Id.*

On April 20, 2009, Plaintiff presented to Dr. Patel for an initial visit. Tr. at 345. Plaintiff complained of low back pain and left leg pain. *Id.* Dr. Patel observed Plaintiff to have normal range of motion in all planes of the lumbar spine; some tenderness to palpation of the lumbar paraspinals bilaterally; intact sensation to light touch in the lower extremities, normal motor examination in the lower extremities; symmetrical reflexes, normal muscle tone with no clonus or muscle atrophy; and positive straight leg raise at 45 degrees. Tr. at 344. Dr. Patel recommended a new MRI of Plaintiff's lumbar spine. *Id.* Dr. Patel also administered a left greater trochanteric bursa injection. Tr. at 342.

MRI of Plaintiff's lumbar spine on April 24, 2009, indicated mild disc degeneration at L3-4 without stenosis; moderate disc degeneration and mild facet arthrosis at L4-5 with minimal central protrusion; and mild disc degeneration and facet arthrosis at L5-S1 with mild left L5 foraminal stenosis and minimal right subarticular disc protrusion. Tr. at 351.

On May 15, 2009, Dr. Patel administered left L4-5 and L5-S1 transforaminal epidural steroid injections. Tr. at 349.

Plaintiff followed up with Dr. Patel on June 1, 2009, for low back pain and left leg pain. Tr. at 341. Dr. Patel noted that Plaintiff had positive straight leg raise and some tenderness in the lumbar spine. Tr. at 341. However, she had normal range of motion in all planes, normal sensory exam, and normal reflexes. *Id.* Dr. Patel recommended that she receive another injection, which he administered on June 12, 2009. Tr. at 347.

On June 29, 2009, Plaintiff followed up with Dr. Patel for low back pain. Tr. at 340. She indicated that her leg pain had improved after she received an epidural steroid injection. *Id.* Dr. Patel noted that Plaintiff had positive straight leg raise and some tenderness in the lumbar spine. Tr. at 340. However, she had normal range of motion in all planes, normal sensory exam, and normal reflexes. *Id.* Dr. Patel recommended that Plaintiff participate in physical therapy. Tr. at 339.

Plaintiff followed up at University Family Medicine Flowertown on July 23, 2009, for anxiety disorder and cellulitis. Tr. at 326. She was noted to be oriented x 3; to have intact recent and remote memory; to have intact judgment and insight; and to have normal mood and affect. *Id.* However, the record also notes "some pressured." *Id.*

Plaintiff presented to Doctors Care on August 30, 2009, with complaint of blood in her urine and severe pain. Tr. at 399. She was diagnosed with a urinary tract infection and uncomplicated pyelonephritis. *Id.*

On October 1, 2009, Plaintiff followed up with Dr. Patel regarding low back and right hip pain. Tr. at 339. Dr. Patel noted that Plaintiff had positive straight leg raise and some tenderness in the lumbar spine and over the left greater trochanteric bursa. Tr. at 338–39. However, she had normal range of motion in all planes, normal sensory exam,

6

and normal reflexes. *Id.* Dr. Patel diagnosed lumbar facet arthropathy, left lumbar radiculopathy, and left greater trochanteric bursitis and recommended that Plaintiff participate in physical therapy and consider spinal injections. Tr. at 338. A greater trochanteric bursa injection was administered on the left side. Tr. at 337.

On November 16, 2009, Plaintiff followed up at University Family Medicine Flowertown regarding anxiety. Tr. at 329. She indicated that she was crying all the time; unable to sleep; having significant stress with finances; and unable to find work. *Id.*

Plaintiff presented to Doctors Care on February 4, 2010, with a panic attack. Tr. at 388. She was noted to be agitated and tearful. *Id.* Her speech was pressured and she exhibited flight of ideas. *Id.* She indicated that her medications were not working, and she was prescribed new medications. *Id.*

Plaintiff contacted Doctors Care on February 17, 2010, to complain of depression and anxiety and to seek a referral for psychiatric treatment. Tr. at 386. She was referred to a mental health provider, but she failed to attend the appointment. Tr. at 384.

Plaintiff presented to Doctors Care on March 5, 2010, with complaints of possible urinary tract infection, kidney stone, and tumor on her right wrist. Tr. at 378. She was prescribed medication for a urinary tract infection and referred to an orthopedist for a cyst on her right wrist. *Id.*

On March 11, 2010, Plaintiff presented to the emergency room at Summerville Medical Center after sustaining a fall and having shelves topple on her. Tr. at 247–51. X-rays of the left hip, left wrist, and cervical spine were unremarkable. Tr. at 219–21.

The record contains an assessment completed after March 2010, by a medical provider at University Family Medicine Flowertown (signature illegible), which indicated that Plaintiff's diagnoses included panic, anxiety, and depression.  Tr. at 445.  The provider indicated that medications had helped Plaintiff's condition and that psychiatric care had been recommended.  *Id.*  The provider indicated that Plaintiff was oriented to all spheres; that her thought process was intact; that her thought content was appropriate; that her mood/affect was worried/anxious; that her attention/concentration was adequate; and that her memory was adequate.  *Id.*  The provider also indicated that Plaintiff had slight work-related limitation in function due to her mental conditions.  *Id.*

Plaintiff followed up at University Family Medicine Flowertown on March 22, 2010, following her visit to the emergency room.  Tr. at 330.  She complained of continued pain and edema in the left hip, but indicated that her left wrist was essentially normal.  *Id.*  She also indicated that she was having problems with her neck and lumbar spine.  *Id.*  She complained of tingling in her left fourth and fifth digits.  *Id.*  Plaintiff reported that her anxiety had improved.  *Id.*  Kimberly N. Mallin, M.D., the attending physician, indicated that Plaintiff was walking with a cane, but had no misalignment, asymmetry, crepitation, defects, or decreased range of motion.  *Id.*

On March 29, 2010, Plaintiff visited Dr. Patel and reported that she had fallen at a store and that shelves had fallen on her.  Tr. at 505.  She reported pain in her neck and on the left side of her head; numbness and tingling in her left arm and fingers; worsening lower back pain and bilateral hip pain; and worsening paresthesias extending into her left leg.  *Id.*  Dr. Patel noted moderate tenderness to palpation of Plaintiff's cervical and

lumbar paraspinals; limited lumbar extension; sensory decreased to light touch in the left thumb, left index finger, and left thigh; normal motor examination in all extremities; and symmetric reflexes. *Id.* Dr. Patel administered bilateral greater trochanteric bursa injections. Tr. at 335–36. Dr. Patel also prescribed a lumbosacral brace. Tr. at 504.

On May 2 and 5, 2010, Plaintiff presented to Doctors Care with complaint of kidney stone and bladder pain. Tr. at 356, 370. She was referred to an urologist. Tr. at 356.

Plaintiff followed up with Dr. Patel on June 16, 2010, regarding low back pain and neck pain. Tr. at 502. Dr. Patel noted moderate tenderness to palpation of the cervical and lumbar paraspinals; limited lumbar extension; decreased sensory to light touch in the left thumb, left index finger, and left thigh; motor exam 5/5 in both upper and lower extremities; and symmetric reflexes. *Id.*

On July 30, 2010, Plaintiff presented to Doctors Care with complaint of dysuria, urinary urgency, and urinary frequency. Tr. at 612. She was diagnosed with urinary tract infection and kidney stone. *Id.*

On August 1, 2010, Plaintiff presented to the emergency room at Summerville Medical Center with flank pain and difficulty and pain with urination. Tr. at 457. She was diagnosed with acute abdominal pain, right nephrolithiasis, and acute urinary tract infection. Tr. at 460.

Lisa Varner, Ph.D., completed a psychiatric review technique on August 9, 2010, in which she indicated that she considered Listings 12.04 for affective disorders, 12.06 for anxiety-related disorders, and 12.09 for substance addiction disorders and concluded

that Plaintiff's impairments were not severe. Tr. at 479. She indicated that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. at 489.

Plaintiff presented to state agency consultative examiner David W. Robinson, M.D., on September 13, 2010, for a comprehensive orthopedic examination. Tr. at 470–77. Dr. Robinson noted that Plaintiff ambulated with a cane. Tr. at 472. Dr. Robinson observed negative straight leg raise; hand strength 4+–5/5 with splinting; intact reflexes in the upper extremities; and soft tissue swelling over both greater trochanters. Tr. at 473. He also observed decreased range of motion of Plaintiff's cervical spine, lumbar spine, bilateral shoulders, and bilateral hips. Tr. at 476. Dr. Robinson indicated that he suspected Plaintiff had some mental health issues based on the fact that the broad spectrum of symptoms she was experiencing were not explainable by a single rheumatologic diagnosis. Tr. at 474. Dr. Robinson suggested that Plaintiff had legitimate pain in her hips that was limiting her, but that she had "some degree of exaggeration of demonstrated pain on her exam today." *Id.* Dr. Robinson indicated the following work-related limitations:

> [P]ersistent or prolonged sitting now will cause discomfort. I think she can generally stand and walk without significant limitations, although long duration walking may be difficult for her . . . . I think she should be able to perform right lifting and carrying. . . . I do generally think that she is able to perform reasonable gross manipulation or fine manipulation of both hands. She should be able to perform light overhead reaching. She is probably not a good candidate for climbing, either many stairs or onto ropes or ladders. She may be able to drive and travel short distances, but doing this for occupational reasons probably is not advisable at this time. . . . She

> generally has the ability to understand, remember, and carry out instructions. Her ability to respond to supervision, coworkers, and work pressures is somewhat in doubt. . . .

Tr. at 475. Dr. Robinson also indicated that a psychological evaluation should be considered. *Id.*

State agency consultant Jim Liao, M.D., completed a physical residual functional capacity assessment on September 24, 2010, in which he indicated that Plaintiff was restricted as follows: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; push and/or pull unlimited; occasionally climbing ramp/stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladder/rope/scaffolds; and avoid concentrated exposure to hazards. Tr. at 450–53.

On October 7, 2010, Plaintiff followed up with Dr. Patel regarding neck pain and back pain. Tr. at 501. Dr. Patel noted moderate tenderness to palpation of the cervical and lumbar paraspinals; limited lumbar extension; sensory decreased to light touch in the left thumb, index finger, and left thigh; normal motor exam in all extremities; and symmetric reflexes. *Id.* Dr. Patel noted that MRI of the cervical spine from September 30, 2010, showed a small disc bulge at C6-7, eccentric to the left. *Id.*

On October 26, 2010, Plaintiff presented to Summerville Medical Center, after having sustained a fall. Tr. at 548. Plaintiff reported numbness and tingling in her bilateral legs. Tr. at 551. Mild tenderness was observed in Plaintiff's mid-lumbar and mid-thoracic areas. Tr. at 549. However, x-rays indicated no abnormalities. *Id.*

11

On October 29, 2010, Dr. Patel administered a left C7-T1 epidural steroid injection. Tr. at 506–07.

Plaintiff followed up with Dr. Patel on November 15, 2010. Tr. at 498. She reported that her neck pain had improved after epidural steroid injection, but that her back continued to bother her, particularly on the left side. *Id.* Dr. Patel noted moderate tenderness to palpation of the cervical and lumbar paraspinals and limited extension of the lumbar spine. *Id.* Sensory was decreased to light touch in the left thumb and index finger and in the left thigh. *Id.* Plaintiff was prescribed a controlled-release pain medication and was scheduled for an epidural steroid injection. *Id.*

On February 1, 2011, Olin Hamrick, Jr., Ph.D., completed a psychiatric review technique in which he indicated that he considered Listings 12.04, 12.06, and 12.09 and concluded that Plaintiff's impairments were not severe. Tr. at 509. Dr. Hamrick concluded that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. at 519.

State agency consultant Isabella McCall, M.D., completed a physical residual functional capacity assessment on February 2, 2011, in which she indicated that Plaintiff had the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday; sit (with normal breaks) for at most four hours in an eight-hour workday; push and/or pull limited to frequent, but not continuous with the left lower extremity; occasionally climbing ramp/stairs, balancing, stooping, kneeling,

crouching, and crawling; never climbing ladder/rope/scaffolds; overhead reaching limited to frequent, but not continuous; and avoid even moderate exposure to hazards.  Tr. at 524–27.

Plaintiff presented to Summerville Medical Center on February 22, 2011, to report anxiety.  Tr. at 532.  Plaintiff indicated that she could not afford her medication and had been out of medication for two weeks.  *Id.*

On April 24, 2011, Plaintiff again presented to Summerville Medical Center with complaint of anxiety.  Tr. at 545.  Plaintiff was out of medications and indicated that she was having frequent panic attacks.  *Id.*

Plaintiff followed up at University Family Medicine Flowertown on June 2, 2011, for anxiety and hypertension.  Tr. at 673.  She indicated that she needed something more for her anxiety.  *Id.*  She was prescribed Paxil and Buspar.  *Id.*

On November 13, 2011, Plaintiff presented to the emergency room at Summerville Medical Center after sustaining a fall.  Tr. at 619.  Plaintiff indicated that she fell down five stairs at her home.  *Id.*  She complained of right lower extremity pain.  *Id.*  Mild tenderness was observed in her right hip and severe tenderness was noted in her right knee and ankle.  Tr. at 620.  X-rays were negative for fracture and Plaintiff was diagnosed with sprained right ankle and foot.  *Id.*

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on January 27, 2012, Plaintiff testified that she last worked for three weeks as a cashier in the spring of the prior year. Tr. at 28. She indicated that she was fired from that job because she was having problems functioning physically and concentrating, which caused her to make a lot of mistakes. *Id.* She testified that she previously worked at Subway for several weeks and was fired because she could not stand or perform the physical labor required. Tr. at 29. She indicated that she had worked as a waitress, but that she could not perform the job after she had surgeries to remove tumors from her uterus and ovaries to remove her gallbladder. *Id.*

Plaintiff testified that she had a history of falls. Tr. at 30. She indicated that she had pain from her lower back through her hips due to protruding discs at L4 and L5. *Id.* She testified that she had bursitis in her bilateral hips. *Id.* She indicated that her left arm went numb and that she had difficulty grasping and handling items with her left hand due to problems at C2 and C3. *Id.* She testified that she had rheumatoid arthritis, 15 broken bones, and panic attacks. *Id.* She testified that severe anxiety and panic attacks caused her to have difficulty concentrating and focusing. *Id.*

Plaintiff testified that, because of back pain, she had difficulty bending, walking, and balancing. *Id.* Plaintiff indicated that she needed to lie down several times per day in order to reduce back pain. Tr. at 31. Plaintiff testified that her back pain increased

with bending, lifting, walking, carrying, sweeping, mopping, and making her bed.  *Id.*
Plaintiff indicated that she used a cane to ambulate.  Tr. at 32.

Plaintiff testified that she experienced numbness in her left hand and that several
times per month, she could not turn on a faucet, brush her hair, or hold a coffee cup.  Tr.
at 34.  Plaintiff indicated that she stopped driving in the fall of the prior year because she
could no longer control her steering wheel with her left hand.  Tr. at 35.

Plaintiff testified that she had difficulty focusing and concentrating because of
pain, anxiety, and medications.  *Id.*

Plaintiff testified that she had panic attacks approximately twice a year for about
four hours each time.  Tr. at 36.

Plaintiff testified that she cooked small meals like grilled cheese sandwiches.  Tr.
at 38.  She indicated that she did not do yard work, but that she did household chores like
making the bed.  *Id.*  However, she indicated that she had to rest between chores.  *Id.*
Plaintiff testified that she generally needed help to dress.  *Id.*

Plaintiff testified that she could lift approximately four to five pounds.  *Id.*  She
indicated that she could sit for fifteen to twenty minutes.  *Id.*  Plaintiff testified that she
could stand for several minutes before needing to sit.  Tr. at 39.  She indicated that she
could walk approximately 35 feet before stopping to rest.  *Id.*

Plaintiff testified that she would lie down from 8:00 a.m. to 11:30 a.m. and again
from 2:30 p.m. to 5:30 p.m. to reduce back pain.  Tr. at 40–41.

b.     Vocational Expert Testimony

Vocational Expert ("VE") Feryal Jubran reviewed the record and testified at the hearing.  Tr. at 41–45.  The VE categorized Plaintiff's PRW as a waitress, Dictionary of Occupational Titles ("DOT") number 311.477-030, as light and semi-skilled with a SVP of 3.  Tr. at 43.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work with a sit/stand option; could occasionally climb, balance, stoop, kneel, crouch and crawl; could never climb ladders; would be limited to understanding, remembering, and carrying out simple instructions; and would be limited to performing simple, routine, and repetitive tasks.  *Id.*  The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW because the hypothetical limited the individual to unskilled work and Plaintiff's PRW was semi-skilled.  *Id.*  The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform.  Tr. at 44.  The VE identified jobs as a stock checker, DOT number 299.667-014, which was light and unskilled with a SVP of 2, with 1,220 positions in South Carolina and 78,000 in the United States; a parking garage attendant, DOT number 915.473-010, which was light and unskilled with a SVP of 2, with 690 positions in South Carolina and 82,000 in the United States; and an office helper, DOT number 239.567-010, which was light and unskilled with a SVP of 2, with 21,990 positions in South Carolina and 1,679,000 positions in the United States.  *Id.*  The ALJ asked if the hypothetical individual could perform the jobs the VE identified if she required unscheduled work breaks which would average two hours out of an eight-hour

day.  *Id.*  The VE indicated that Plaintiff would be unable to perform the jobs identified

or any other jobs with that additional limitation.  *Id.*

Plaintiff's attorney asked the VE to assume the same individual and to assume that

the individual would be absent from work on one day per week due to persistent pain.

Tr. at 45.  Plaintiff's attorney asked if there would be any jobs that the hypothetical

individual could perform.  *Id.*  The VE testified that there would not be any jobs.  *Id.*

2.    The ALJ's Findings

In his decision dated February 24, 2012, the ALJ made the following findings of

fact and conclusions of law:

1.    Claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.    Claimant has not engaged in substantial gainful activity since January 1, 2007, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    Claimant has the following severe impairments:  cervical degenerative disc disease, lumbar degenerative disc disease, and greater trochanter bursitis (20 C.F.R. § 404.1520(c) and 416.920(c)).

4.    Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with some additional limitations. Specifically, claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She can stand, walk, and sit for an eight-hour day. Claimant, however, requires a sit/stand option.  She can balance, stoop, kneel, crouch, crawl, and climb only occasionally.  She is restricted from climbing ladders.  Claimant is further limited to remembering and carrying out simple instructions as well as the performance of simple, routine, repetitive tasks.

6.    Claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. Claimant was born on July 30, 1963 and was 43 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. Claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2007, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

Tr. at 11–18.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1) The ALJ failed to find Plaintiff's anxiety, limited use of the left hand, and genitourinary conditions to be severe impairments;

2) The ALJ assessed a RFC that failed to accommodate all of Plaintiff's exertional and nonexertional limitations; and

3) The ALJ's reliance on the VE's testimony was based on an incomplete hypothetical and not based on substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

18

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1]  The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen*

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982).  The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls*

*v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

21

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Severe Impairments

Plaintiff argues that the ALJ erred in failing to deem anxiety, depression, cervical radiculopathy to the left hand, and genitourinary problems to be severe impairments. [Entry #15 at 15–16]. Plaintiff argues that treatment records support the severity of these impairments. *Id.* Plaintiff further argues that the ALJ's failure to properly evaluate Plaintiff's severe impairments undermined subsequent steps in the sequential evaluation process. [Entry #15 at 17].

The Commissioner argues that the ALJ properly deemed depression and anxiety to be nonsevere impairments because Plaintiff's anxiety was mild and controlled with medication and there was no specific evidence in the record regarding Plaintiff's allegation of seasonal depression. [Entry #17 at 12–13]. The Commissioner argues that Plaintiff failed to reference any objective evidence that corroborates her claim that she had radicular symptoms into her left hand that caused limitations to her RFC. [Entry #17 at 14]. Finally, the Commissioner argues that Plaintiff only referenced a possible diagnosis for her genitourinary impairments and failed to present evidence regarding their severity. [Entry #17 at 15].

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe

impairment is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508. Determination of severity of claimant's impairment is "[a] de minimis hurdle in [the] disability determination process," meant to expedite just settlement of claims by "screening out totally groundless claims." *Anthony v. Astrue*, 266 Fed.Appx. 451, 457 (6th Cir. 2008).

A finding of a single severe impairment at step two of the sequential evaluation process is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Therefore, this court has found no reversible error where the ALJ does not find an impairment severe at step two provided that he considers that impairment in subsequent steps. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (collecting cases); *Singleton v. Astrue*, No. 9:08-1982-CMC, 2009 WL 1942191, at *3 (D.S.C. July 2, 2009).

### a.    Anxiety and Depression

The ALJ addressed Plaintiff's anxiety and depression at step two as follows:

> Primary care treatment records document diagnoses of an anxiety state as well as anxiety. Claimant's primary care physician prescribed claimant medications such as Cymbalta, Paxil, and Buspar for symptoms relating to

her anxiety. Treatment records indicate that these medications were generally effective. (Exhibits 6F, 22F, and 29F) There is no specific medical evidence in the record, however, with regard to claimant's allegations of seasonal depression. Claimant has not required any inpatient psychiatric hospitalizations and she has not received any treatment from mental health professionals during the time period at issue.

A thorough review of the evidence shows anxiety and depression no more than mildly affect claimant's activities of daily living; social functioning; concentration, persistence, or pace and that depression has not caused any episodes of decompensation. Therefore because anxiety and depression no more than minimally limit claimant's ability to perform basic work activities, they are found to be non-severe impairments. (20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1)).

Tr. at 12.

The undersigned recommends a finding that the ALJ erred in failing to determine that Plaintiff's anxiety was a severe impairment. The medical evidence includes notes from multiple doctors' visits and emergency room presentations that documented symptoms of anxiety. Between January 11, 2009 and April 24, 2011, Plaintiff visited the emergency room at Summerville Medical Center on three occasions with reports of anxiety and panic attacks. See Tr. at 257, 532, 545. Plaintiff was primarily treated for anxiety by University Family Medicine Flowertown, which she visited specifically for anxiety symptoms and to receive refills for anti-anxiety medications on five occasions between January 11, 2009 and June 2, 2011. See Tr. at 322, 324, 326, 329, 673. Contrary to the ALJ's indication, Plaintiff's medications had to be adjusted at least twice because of Plaintiff's complaints of increased symptoms. See Tr. at 388, 673. Plaintiff's symptoms of anxiety were so pronounced that Dr. Jaskwich, who was examining Plaintiff for an orthopedic problem, noted that Plaintiff was "anxious" and Dr. Robinson,

the state agency consultative examiner, indicated that Plaintiff had "mental health issues," opined that "her ability to respond to supervision, coworkers, and work pressures" was "somewhat in doubt," and recommended that a psychological evaluation be considered. See Tr. at 346, 474–475. In light of this evidence, the undersigned recommends a finding that substantial evidence did not support the ALJ's conclusion that anxiety "no more than minimally limited claimant's ability to perform basic work activities." See Tr. at 12.

While an ALJ's failure to recognize an impairment as "severe" at step two may be considered harmless error if the ALJ considers the impairment at subsequent steps, the undersigned recommends a finding that the ALJ did not adequately consider Plaintiff's anxiety at subsequent steps. While he did consider Plaintiff's anxiety at step three, when determining that her impairments did not meet Listings 12.04 and 12.06, he did not consider it in determining Plaintiff's RFC. The ALJ considered whether anxiety was a disabling impairment when considered alone, but he did not consider it in determining the effects of Plaintiff's combination of impairments. The ALJ limited Plaintiff to "remembering and carrying out simple instructions as well as the performance of simple, routine, repetitive tasks," but he specified that the limitations were based on pain and fatigue interfering with her concentration. Tr. at 16. He made no mention whatsoever of the impact of anxiety on Plaintiff's RFC.

The undersigned recommends a finding that the ALJ did not err in failing to consider depression as a severe impairment at step two or in subsequent steps. The

medical evidence references no specific treatment for depression and does not indicate that depression significantly limited Plaintiff's ability to perform basic work activities.

### b.    Left Hand Impairment

The ALJ briefly addressed Plaintiff's left hand impairment at step two by noting that "Dr. Robinson also documented that claimant had reasonable range of motion of her shoulders, wrists, and hands." Tr. at 12.

At step four, the ALJ noted that the limitations he imposed on climbing "also accounted for any difficulties claimant may have using her upper extremity." Tr. at 16. He further noted that "[m]ore specific limitations on claimant's left upper extremity, however, are not supported by the medical evidence which reveals that claimant typically had motor strength of 5/5 in her upper extremities."

The undersigned recommends a finding that the ALJ properly assessed Plaintiff's left hand impairment at step two and in subsequent steps. Plaintiff complained of left wrist pain and tingling in her left fourth and fifth digits in March 2010, but the record indicates that Plaintiff made no subsequent complaints to her treating providers of left upper extremity pain or limited use after March 2010. See Tr. at 221, 330. While the medical evidence references decreased sensation to light touch in Plaintiff's left thumb and index finger, the medical records do not indicate limitations as a result of those findings. See Tr. at 498, 501, 502, 505. X-rays of Plaintiff's left wrist were normal. Tr. at 221. Dr. Robinson noted 4+–5/5 grip strength. Tr. at 472. He indicated that Plaintiff could engage in "reasonable gross and fine manipulation with both hands," which is ambiguous. *See id.* However, the record was subsequently reviewed by Drs. Liao and

McCall, who noted no restrictions on Plaintiff's ability to use her hands, even after reviewing Dr. Robinson's note regarding Plaintiff's use of her bilateral hands. *See* Tr. at 449–56 and 523–30. The undersigned finds that substantial evidence supports the ALJ's conclusion that Plaintiff had no work-related limitations secondary to left hand impairment.

### c.     Genitourinary Problems

The undersigned recommends a finding that the ALJ did not err in failing to find Plaintiff had severe genitourinary problems because the record does not indicate that genitourinary problems significantly limited Plaintiff's ability to do basic work activities. The undersigned's review of the record indicates that Plaintiff presented to medical facilities with complaints related to urinary tract infection and kidney stones on the following dates: August 9, 2008, February 18, 2009, August 30, 2009, March 5, 2010, May 2, 2010, May 5, 2010, July 30, 2010, and August 1, 2010. See Tr. at 272–75, 356, 370, 378, 399, 422, 457–60, 612. Plaintiff had a urinary tract infection and kidney stone approximately once every six months between August 9, 2008 and March 5, 2010. Between March 2010 and August 2010, her genitourinary problems were more frequent, but the record contains no indication of any complaint of symptoms related to these impairments within a year-and-a-half of Plaintiff's hearing. Plaintiff did not endorse any work-related problems as a result of urinary tract infections or kidney stones in her testimony and the record does not suggest work-related limitations specific to genitourinary problems. Therefore, the ALJ did not err in failing to consider genitourinary problems to be a severe impairment.

2.    RFC

Plaintiff argues that the ALJ neglected to include in the RFC specific restrictions regarding standing, stair climbing, and left hand use that were set forth by the state agency examiner.  [Entry #15 at 18].  Plaintiff also argues that the ALJ neglected to include any limitations based on the state agency examiner's opinion that Plaintiff would have difficulties dealing with supervision, co-workers, and work pressures.  *Id.*

The ALJ's RFC assessment should be based on all the relevant evidence.  20 C.F.R. § 404.1545(a).  Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."    SSR 96-8p.    The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ."  *Id.*  The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule.  *Id.*

a.    Standing Ability

Social Security Ruling 83-12 addresses the need to alternate sitting and standing as follows:

> In some disability claims, the medical facts lead to an assessment of RFC which [is] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for time, but must then get up and stand or walk for a while before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. . . .

> [M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task.  Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS[3] should be consulted to clarify the implications for the occupational base.

Social Security Ruling 83-12 provides that an ALJ should consult a VE if a claimant has "unusual limitation of ability to sit or stand."  Here, the ALJ did consult a vocational expert, but the controversy is over whether the ALJ properly framed Plaintiff's abilities to sit and stand when determining Plaintiff's RFC.

The Commissioner relies on *Barnes v. Astrue*, No. 1:09CV553, 2011 WL 6371005, at *3 (M.D.N.C. Dec. 20, 2011), to argue that the ALJ accommodated the limitations identified by Dr. Robinson when he identified a sit/stand option in determining Plaintiff's RFC.  [Entry #17 at 16–17].

Plaintiff argues that the ALJ's failure to designate the sit/stand option as being at-will or at Plaintiff's discretion and his failure to indicate that Plaintiff could not engage in prolonged standing and walking ignores Dr. Robinson's opinion and distinguishes this case from *Barnes*.  [Entry #18 at 11–12].

Dr. Robinson indicated that "persistent or prolonged sitting" would "cause discomfort" and that "long duration walking may be difficult for her."  Tr. at 475.

The ALJ indicated that he gave "some weight" to the opinion of Dr. Robinson and that he "allowed" Plaintiff "a sit/stand option" because "the medical evidence does

---

[3] When SSR 83-12 was issued, VEs were referred to as vocational specialists or VSs.

support a conclusion that claimant may have some difficulty with walking for long periods of time." Tr. at 16.

Dr. Robinson's statements lacked specificity regarding time parameters that would constitute "prolonged sitting" and "long duration walking." Therefore, it was necessary for the undersigned to examine the record to determine how Dr. Robinson's opinion was specifically interpreted by the consulting physicians from the state agency. Drs. Liao and McCall reviewed the record after Plaintiff's consultative examination with Dr. Robinson and completed physical residual functional capacity assessments in which they set forth more specific restrictions. Dr. Liao indicated that Plaintiff could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. Tr. at 450. However, in sharp contrast, Dr. McCall indicated that Plaintiff could stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday and sit (with normal breaks) for at most four hours in an eight-hour workday. Tr. at 524.

The ALJ indicated that the exertional and postural limitations that Drs. Liao and McCall indicated were "generally consistent with the evidence of record." Tr. at 16.

The undersigned recommends a finding that the ALJ did not properly consider Plaintiff's abilities to sit, stand, and walk in determining her RFC. The undersigned finds it unnecessary to address the arguments set forth regarding *Barnes* because *Barnes* specifically addresses the sit/stand option, but the ALJ erred in his entire assessment of Plaintiff's abilities to sit, stand, and walk over the course of an eight-hour workday. The undersigned's review of the record reveals ambiguities in Dr. Robinson's statement that

were interpreted in two very different ways by Drs. Liao and McCall. Dr. Liao interpreted Dr. Robinson's opinion to mean that Plaintiff could sit for up to six hours during a workday and stand for up to the same amount of time. See Tr. at 450. However, Dr. McCall suggested that Plaintiff may be unable to alternate sitting and standing over the course of an eight-hour workday. Tr. at 524. The ALJ concluded that Plaintiff could stand, walk, and sit for an eight-hour day with a sit/stand option. Tr. at 13. However, the ALJ also indicated that the exertional and postural limitations that Drs. Liao and McCall indicated were "generally consistent with the evidence of record" where Drs. Liao and McCall provided widely divergent opinions regarding Plaintiff's abilities to sit, stand, and walk and where Dr. McCall's opinion indicated that Plaintiff may be incapable of sitting, standing, and walking for a combined eight-hour workday. The undersigned is unable to determine whether the ALJ's inclusion of a sit/stand option in the RFC is consistent with Dr. Robinson's assessment because the ALJ seems to have adopted two very different interpretations of Dr. Robinson's assessment and opinion. Therefore, the ALJ's conclusion regarding Plaintiff's abilities to sit, stand, and walk were not supported by substantial evidence.

b.     Climbing Stairs

The Commissioner argues that the ALJ accounted for Dr. Robinson's restrictions on stair climbing by limiting Plaintiff to occasional stair climbing and no climbing of ropes and ladders. [Entry #17 at 17]. In addition, the Commissioner notes that the jobs identified by the VE did not involve stair climbing. *Id.*

Dr. Robinson indicated that Plaintiff was "probably not a good candidate for climbing, either many stairs or onto ropes or ladders." Tr. at 475.

The ALJ noted that he rejected Dr. Robinson's opinion regarding Plaintiff's ability to climb because the overall medical evidence did not support a finding that Plaintiff could not do any climbing. Tr. at 17. However, the ALJ found in his RFC that Plaintiff was limited to occasional climbing and that she was restricted from climbing ladders.

Dr. Robinson's indications were again vague, so the undersigned found it necessary to consider the restrictions identified by the state agency consultants, who reviewed Dr. Robinson's report along with the other medical evidence. Dr. Liao indicated that Plaintiff could occasionally climb stairs. Tr. at 451. Dr. McCall also indicated that Plaintiff could occasionally climb stairs. Tr. at 525.

The undersigned recommends a finding that the ALJ properly considered the limitation imposed by Dr. Robinson regarding Plaintiff's ability to climb stairs. Dr. Robinson's indication that Plaintiff was "not a good candidate for climbing . . . many stairs" was interpreted by two physicians to limit Plaintiff to occasional stair climbing. Plaintiff failed to introduce evidence to support any other interpretation of this restriction. Therefore, the ALJ's conclusion is supported by substantial evidence.

c.    Using Left Hand

The Commissioner claims that Plaintiff failed to comply with Local Civ. Rule 7.05A(3) by failing to cite findings that show limited ability to use her left hand. [Entry #17 at 17]. In addition, the Commissioner argues that Dr. Robinson's opinion regarding

Plaintiff's use of her left hand does not equate to a finding that Plaintiff was limited to occasional use of her left hand.  *Id.*

Dr. Robinson indicated that Plaintiff could "perform reasonable gross manipulation or fine manipulation of both hands."  Tr. at 475.

The ALJ indicated that he accepted Dr. Robinson's opinion regarding Plaintiff's abilities to perform overhead lifting and gross and fine manipulation as being consistent with the overall evidence as well as the assigned RFC.  Tr. at 16.

Because the undersigned has previously recommended a finding that left hand use was not a severe impairment and that the ALJ addressed it properly at all steps, the undersigned recommends a finding that the ALJ properly considered Plaintiff's left hand use in determining Plaintiff's RFC.

d.    Handling Supervision, Coworkers, and Work Pressures

The Commissioner argues that Plaintiff failed to cite to findings that support her claim that she had difficulty maintaining focus and concentration and that, because Dr. Robinson conducted a comprehensive orthopedic examination as opposed to a psychological examination, the ALJ was not required to evaluate Dr. Robinson's opinion regarding Plaintiff's ability to respond to supervisors, co-workers, and work pressure. [Entry #17 at 18].

The ALJ indicated that he accorded little weight to Dr. Robinson's opinion about Plaintiff's ability to respond to supervision, co-workers, and work pressures because "Dr. Robinson only examined claimant on one occasion and none of claimant's treating providers have questioned her ability to respond appropriately in the work environment."

The undersigned has previously recommended a finding that the ALJ erred in not considering Plaintiff's anxiety disorder to be a severe impairment. Because Dr. Robinson's indication that Plaintiff would have difficulties with supervision, co-workers, and work pressures is related to consideration of her anxiety disorder, the undersigned recommends that this limitation be addressed upon remand. The undersigned recommends that where, as here, there is medical evidence consisting of signs, symptoms, and a diagnosis of impairment and where there are specific indications in the record that the impairment affects Plaintiff's ability to perform in a work environment, the impairment should be considered severe and evaluated in determining Plaintiff's RFC.

### 3.     Incomplete Hypothetical and VE Testimony

Plaintiff argues that the VE's testimony was flawed because the VE identified jobs in response to the ALJ's hypothetical questions that were based on an incomplete RFC evaluation. [Entry #15 at 19].

The Commissioner argues the ALJ posed a proper hypothetical to the VE that was supported by substantial evidence in the record. [Entry #17 at 18–21].

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls*, 296 F.3d at 290. The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper

hypothetical questions which fairly set out all of claimant's impairments." *Johnson*, 434 F.3d at 659 (quoting *Walker*, 889 F.2d at 50); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

Because the undersigned recommends findings that the ALJ erred in considering Plaintiff's anxiety and in assessing that part of Plaintiff's RFC pertaining to her abilities to sit, stand, and walk, the ALJ failed to frame a hypothetical that fairly set out all of Plaintiff's impairments. Based on these flaws, the VE's testimony does not constitute substantial evidence in support of the ALJ's decision.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

Shiva V. Hodges

August 29, 2014                                Shiva V. Hodges
Columbia, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).